STATE STREET TRUST COMPANY & others *vs.* JOHN L. HALL
& others.

Suffolk.     January 8, 1942. — April 1, 1942.

Present: FIELD, C.J., QUA, DOLAN, & RONAN, JJ.

*Trust,* Business trust, Massachusetts trust. *Partnership,* What constitutes. *Uniform Partnership Act.*

A Massachusetts real estate trust existing under a declaration of trust providing that the shares should be freely transferable, that a transferee should succeed to the rights of the transferor, that the property should be held and managed by the trustees and the shareholders should have no title or estate therein during the continuance of the trust, that death of a shareholder should not terminate the trust nor entitle his successor to seek partition of the trust property, that the trustees should be subject to removal, direction and control by the shareholders, and that the trust should not terminate until a specified time unless by action of three fourths of the shareholders or by the trustees in their discretion, was not so far of the nature of a partnership as to entitle the holders of a minority of the shares to dissolve the trust at will either at common law or under the provisions of the uniform partnership act, where they did not contend that there had been mismanagement by the trustees or that the trust was insolvent.

BILL IN EQUITY, filed in the Superior Court on October 2, 1940, and afterwards amended, by holders of twenty-four hundred of the seventy-two hundred shares of the Shearer Realty Trust.

The suit was heard by *Greenhalge,* J.

*S. H. Batchelder,* (*A. Gardner* with him,) for the plaintiffs.

*R. R. Elliott,* (*G. V. Mottla* with him,) for the defendants Downs and another.

*C. P. Curtis, Jr.,* for the defendant Hall, & *N. B. Vanderhoof,* guardian ad litem, were present but neither argued nor submitted a brief.

RONAN, J.   This is a bill in equity by the holders of certificates of shares of the Shearer Realty Trust, created by a declaration of trust dated October 1, 1912, against the trustees of the said trust and the holders of the remaining shares, to obtain an accounting and a distribution of the

trust property. The plaintiffs allege that they had given notice on June 1, 1940, to the other shareholders that the trust was dissolved and requested the trustees to distribute the property among the shareholders. The bill has been amended praying for a dissolution of the trust. The plaintiffs aver that the income from the property now held by the trustees would be increased if Federal income taxes and other avoidable expense were eliminated by the dissolution of the trust and by the management of the real estate by the present shareholders as tenants in common. The plaintiffs appealed from an interlocutory decree sustaining demurrers filed by some of the defendants, and from a final decree dismissing the bill which was entered after a hearing upon the facts alleged and admitted in the answers filed by the remaining defendants.

In accordance with the declaration of trust the title to the trust property, which consists of a large mercantile building and a garage in Boston and considerable cash and securities, is held by trustees. The beneficial interest is divided into seventy-two hundred shares, each representing $100 paid in. The certificates of shares expressly provide that "By acceptance of this certificate the holder accepts and becomes bound by the terms of said Declaration of Trust." No title or estate in the property held by the trustees is to vest in the shareholders during the continuance of the trust, and the sole interest of a shareholder is the obligation of the trustees to hold, manage and dispose of the property and to account for its income and the proceeds. The trust is to terminate twenty years after the death of two named persons. The death of the last one occurred on February 16, 1936, and consequently the trust, unless terminated by vote of the shareholders or by the trustees in accordance with its provisions, will not by its terms end before February, 1956. The trustees are empowered at any time in their discretion to liquidate the trust, and they are to wind up the trust whenever directed to do so by a writing or a vote of shareholders representing three fourths of the outstanding shares. It is provided that the death of a shareholder shall not terminate the

trust nor entitle his legal representatives to take any action for partition or winding up the trust, but they shall succeed to all rights of the decedent. The shareholders may require the trustees to call meetings at which the shareholders may vote; they may instruct, remove and replace the trustees and may amend the trust. The trustees are subject to the direction and control of the shareholders. This form of a business trust has for many purposes been regarded as a partnership and some of the principles of the law governing partnerships have been applied to them. *Frost* v. *Thompson*, 219 Mass. 360. *Howe* v. *Chmielinski*, 237 Mass. 532. *Neville* v. *Gifford*, 242 Mass. 124. *Flint* v. *Codman*, 247 Mass. 463. *Cohen* v. *Ziskind*, 290 Mass. 282. *First National Bank of New Bedford* v. *Chartier*, 305 Mass. 316.

The plaintiffs contend that at common law and under the uniform partnership act, G. L. (Ter. Ed.) c. 108A, they have the right to dissolve this trust by giving notice to this effect to the remaining shareholders. Section 31 (2) of this chapter provides for dissolution by notice and, if this section is applicable, the dissolution of the trust has been accomplished. The plaintiffs rely upon the general rule that one cannot be required to remain a member of a partnership, and that he may dissolve the firm before the time fixed for its termination without liability unless he does so without adequate cause. *Karrick* v. *Hannaman*, 168 U. S. 328. *Lapenta* v. *Lettieri*, 72 Conn. 377. *Munroe* v. *Conner*, 15 Maine, 178. *Terry* v. *Carter*, 25 Miss. 168. *Bagley* v. *Smith*, 6 Seld. 489. *Cahill* v. *Haff*, 248 N. Y. 377. *Jacob C. Slemmer's Appeal*, 58 Penn. St. 168, 176. See *Dunham* v. *Gillis*, 8 Mass. 462; *Capen* v. *Barrows*, 1 Gray, 376; *Jewett* v. *Brooks*, 134 Mass. 505, 506.

We would not dispute the soundness of this principle or its pertinency if we were dealing with an ordinary partnership. We cannot ignore the differences between an ordinary partnership and a business trust of the kind in question. To do so would be to shut our eyes to realities. Neither can we label this trust as nothing more or less than the usual type of partnership and deal with it entirely upon that basis. *Guy* v. *Donald*, 203 U. S. 399, 405, 406. *In re J. H. P.*

*Davis & Co.* 30 Fed. (2d) 937. *Lucas* v. *Extension Oil Co.* 47 Fed. (2d) 65. *Harris* v. *United States,* 51 Fed. (2d) 382. 23 Columbia Law Review, 423.

An inherent quality of an ordinary partnership is that its membership is limited to those who are selected by mutual consent on account of their ability, integrity and other personal qualifications to join together in conducting a commercial undertaking. Freedom of choice of those who are to compose the partnership is the right of each of those who are contemplating the formation of the firm, and after it has been organized a similar freedom exists in determining the admission of new members. *Kingman* v. *Spurr,* 7 Pick. 235. *Marlett* v. *Jackman,* 3 Allen, 287. That element is entirely lacking in this business trust. There is no restriction upon the transfer of the shares, and one may withdraw by the sale of his shares and the purchaser will succeed to his rights. Membership in this commercial venture depended entirely upon the ownership of the shares rather than on the choice of associates.

The existence of a particular firm ordinarily depends upon the continuance of the same persons and no others as associates in the business. Identity of its membership determines the duration of the firm. The death of a partner usually dissolves the firm. *Wellman* v. *North,* 256 Mass. 496. *Hawkes* v. *First National Bank of Greenfield,* 264 Mass. 545. *Wolbach* v. *Commissioner of Corporations & Taxation,* 268 Mass. 365. That is not the situation here. The declaration of trust in this case expressly provides that the death of a shareholder shall not terminate the trust, and that the personal representatives or assigns of the decedent shall succeed to the rights of the decedent as a shareholder. It further provides that those acquiring the rights of a decedent shareholder shall not be entitled to bring proceedings for a partition of the trust property or to wind up the trust.

Not only does this trust differ in its essential features from an ordinary partnership, but it possesses many of the attributes that are characteristic of a corporation. Title to property in one case is held by the corporation and in the other by trustees; centralized management is effected in

one by a board of directors and in the other by trustees; the continuity of both the corporation and the trust is uninterrupted by the death of a stockholder or shareholder; the transfer of beneficial interests in both is readily and easily accomplished by the transfer of the shares and the shareholders in each seek limited personal liability. The sum total of these distinctive features of a business trust has brought trusts into such close resemblance to corporations that they have been frequently considered as corporations, sometimes by virtue of constitutional or statutory provisions and sometimes without such provisions.[1] The resemblance has been held to be sufficient to warrant legislation classifying them with corporations for some purposes. *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110, 114. *Morrissey* v. *Commissioner of Internal Revenue*, 296 U. S. 344, 360.

Indeed, this very trust now under consideration is taxed as a corporation upon its income under an act of Congress similar to that referred to in the case last cited, and to avoid the expense of such taxes seems to be the principal reason alleged in the bill for the dissolution of the trust. The plaintiffs do not contend that this trust cannot be considered as a corporation for the imposition of these Federal taxes. The plaintiffs doing business under a declaration of trust in partnership form cannot insist that the nature of their organization be determined apart from the instrument of trust by which it was created and maintained.

Business organizations formed by declarations of trust, whereby property is conveyed to trustees to be held and

---

[1] *Hecht* v. *Malley*, 265 U. S. 144. *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110. *Hemphill* v. *Orloff*, 277 U. S. 537. *Morrissey* v. *Commissioner of Internal Revenue*, 296 U. S. 344. *Swanson* v. *Commissioner of Internal Revenue*, 296 U. S. 362. *Helvering* v. *Combs*, 296 U. S. 365. *Helvering* v. *Coleman-Gilbert Associates*, 296 U. S. 369. *In re Associated Trust*, 222 Fed. 1012. *Malley* v. *Bowditch*, 259 Fed. 809. *In re Tidewater Coal Exchange*, 280 Fed. 638. *Gallagher* v. *Hannigan*, 5 Fed. (2d) 171; certiorari denied, 269 U. S. 573. *Reilly* v. *Clyne*, 27 Ariz. 432. *In re Girard*, 186 Cal. 718. *Wagner* v. *Kelso*, 195 Iowa, 959. *Hamilton* v. *Young*, 116 Kans. 128. *King* v. *Commonwealth*, 197 Ky. 128. *People* v. *Clum*, 213 Mich. 651. *Hibbs* v. *Brown*, 190 N. Y. 167. *State* v. *Paine*, 137 Wash. 566. See *Opinion of the Justices*, 196 Mass. 603; *Kennedy* v. *Hodges*, 215 Mass. 112; *Coolidge* v. *Old Colony Trust Co.* 259 Mass. 515; *Goodhue* v. *State Street Trust Co.* 267 Mass. 28, 34.

managed by them for the benefit of such persons as may from time to time be holders of transferable shares issued by the trustees and evidencing their beneficial interest in the trust property, have been recognized for many years as a common and lawful method of transacting business in this Commonwealth. It has been said that this method of conducting a commercial enterprise originated in this Commonwealth as the result of the inability to secure charters for acquiring and developing real estate without a special act of the Legislature. Accordingly, the usual purpose of these early organizations was to deal in real estate, but with the passing years business trusts have greatly increased in number and have been used extensively in conducting nearly all kinds of industrial and commercial activities. There are many statutes manifesting a legislative intent that unincorporated associations be treated as a distinct type of business organization. G. L. (Ter. Ed.) c. 59, § 5, Twenty-ninth; c. 62, §§ 1 (c), 17, 21, 33, 60; c. 64, §§ 2, 10, 11; c. 167, § 1; c. 175, § 1; c. 223, §§ 36, 40; c. 266, §§ 58, 59. General Laws (Ter. Ed.) c. 182, § 6, authorizes the bringing of actions at law upon certain claims against an association or trust created by a declaration of trust, the beneficial interest in which is represented by transferable shares, and makes its property subject to attachment and execution in like manner as if it were a corporation. *Tyler* v. *Boot & Shoe Workers Union*, 285 Mass. 54. *Dolben* v. *Gleason*, 292 Mass. 511. *Ballentine* v. *Eaton*, 297 Mass. 389. *Mulloney* v. *United States*, 79 Fed. (2d) 566. *Bomeisler* v. *M. Jacobson & Sons Trust*, 118 Fed. (2d) 261.

The first decision of this court relative to the rights of a holder of transferable shares in one of these trust organizations was rendered in 1827 in *Alvord* v. *Smith*, 5 Pick. 232. Various aspects of these trusts have been before this court and a great body of law has been established in respect to them, yet the right of a shareholder to secure a dissolution of the trust before the time fixed for its termination for reasons similar to those alleged in this bill has not been adjudicated by this court. It is significant that the ques-

tion has not arisen in view of the general use of these trusts in the commercial world, the great amounts of money invested in them, and the numerous legal problems that they have presented. A shareholder's bill seeking liquidation of a trust owning and managing real estate on the ground that the trust created an illegal restraint upon the alienation of its property was dismissed in *Howe* v. *Morse*, 174 Mass. 491. It was said in *Peterson* v. *Hopson*, 306 Mass. 597, 611, as a step in the reasoning, that the holder of preferred shares in a trust "has no right to immediate liquidation. His investment must remain at the risk of the business, perhaps for many years."

The nature of the business upon which the trust was to embark made it necessary, in the opinion of those who created it, that the business career of the trust should extend over a number of years. It would take a considerable period of time to acquire a site, erect a large mercantile building, secure tenants, and put the business in full operation. The fact that the trust would in all probability continue in active management and control of its property for several years might facilitate the financing of the project. Permanency of the plan might be attractive not only to banks lending money to the trust but also to those who invest in realty shares. No one investing in shares would contemplate that the existence of the trust depended upon the pleasure or fancy of anyone who might hold a few shares, especially where, as here, the terms of the trust were flexible enough to permit its termination if a situation developed that would call for such action by the trustees or by the prescribed number of shareholders. As a matter of reason the existence of any power in the holder of a few shares to dissolve the trust is utterly inconsistent with the stability of the plan devised by the trust for the conduct of its business.

The origin, measure and extent of the rights of a shareholder in this business trust are determined in the first instance by his certificate of the shares, and this, in turn, depends upon the provisions of the declaration of trust. The certificates did not impose any obligation upon the

holders to continue in the business of the trust and they could at any time withdraw from the undertaking by a sale of their shares. Of course, they could not be compelled to sell their shares, but if they held them they could enforce only whatever rights they acquired by their certificates. The certificates on their face made the shareholder bound by the declaration of trust. The plaintiffs accepted and held their shares subject to this limitation. *Barrett* v. *King*, 181 Mass. 476. *Brown* v. *Little, Brown & Co. (Inc.)* 269 Mass. 102. *Albert E. Touchet, Inc.* v. *Touchet*, 264 Mass. 499. *Krauss* v. *Kuechler*, 300 Mass. 346. *New England Trust Co.* v. *Spaulding*, 310 Mass. 424. The terms of the declaration fully defined the interest of the shareholders in the property of the trust. No title or estate in the property held by the trustees was to vest in the shareholders, and the "sole interest of each shareholder" was limited to the obligation of the trustees to manage and dispose of the property and to account for its income and proceeds as provided in the instrument of trust. The only right to participate in a distribution of the property before the expiration of the twenty-year period does not arise until there has been a winding up of the trust by the trustees in their discretion or in accordance with a writing or vote of at least three fourths of the outstanding shares. The instrument, which appears to be complete and comprehensive, having provided for two methods by which the trust might be wound up by the voluntary action of the trustees or the shareholders, the plaintiffs have no right to engraft upon the instrument a third method. *Glackin* v. *Bennett*, 226 Mass. 316. *Western Newspaper Union* v. *Dittemore*, 264 Mass. 74. *S. F. Bowser & Co. Inc.* v. *Independent Dye House, Inc.* 276 Mass. 289. *Whitty Manuf. Co. Inc.* v. *Clark*, 278 Mass. 370.

No action has been taken by the trustees or by the prescribed number of shareholders to dissolve the trust and wind up its affairs, and the certificates held by the plaintiffs gave them no right at the time they gave notice or subsequently thereto to share in the distribution of the trust property, which they are attempting to do by effecting a

dissolution of the trust. Whatever proprietary interests the plaintiffs had by virtue of their certificates, they were subject to the inherent infirmity imposed by the declaration of trust, which was referred to in the certificates themselves. The certificates gave them no right to an immediate distribution of the trust property. *Kingman* v. *Spurr,* 7 Pick. 235. *French* v. *Old South Society in Boston,* 106 Mass. 479. *Adams* v. *Protective Union Co.* 210 Mass. 172. *Longyear* v. *Hardman,* 219 Mass. 405. *Fopiano* v. *Italian Catholic Cemetery Association,* 260 Mass. 99. *Krauss* v. *Kuechler,* 300 Mass. 346. *New England Trust Co.* v. *Spaulding,* 310 Mass. 424.

The declaration of trust does not in terms forbid a single shareholder having less than three fourths of the shares dissolving the trust. One of the dominant purposes of the trust was to assure its continuance for a long period of years unless sooner terminated in accordance with its terms. The existence of the trust was placed on a ground unaffected by those vicissitudes, such as death and withdrawal of partners, that usually bring an end to the firm. It fairly appears as a necessary implication of the declaration of trust that the owner of less than three fourths of the shares has no authority to dissolve the trust. The plaintiffs, as minority shareholders, were under an implied obligation not to prevent the normal functioning of the organization for the period fixed by the instrument of trust for its duration. *Phillips* v. *Blatchford,* 137 Mass. 510. *Proctor* v. *Union Coal Co.* 243 Mass. 428. *Pittsfield & North Adams Railroad* v. *Boston & Albany Railroad,* 260 Mass. 390. *Boston & Providence Railroad* v. *Old Colony Railroad,* 269 Mass. 190. *Eastern Massachusetts Street Railway* v. *Union Street Railway,* 269 Mass. 329. *McNally* v. *Schell,* 293 Mass. 356.

It has been generally held, when the question has arisen in other jurisdictions, that a shareholder is not entitled at will to effect a dissolution of a business trust merely by virtue of his ownership of shares. *Hossack* v. *Ottawa Development Association,* 244 Ill. 274. *Whitaker* v. *Scherrer,* 313 Ill. 473. *Aronson* v. *Olsen,* 348 Ill. 26. *Oklahoma*

*Fullers Earth Co.* v. *Evans,* 179 Okla. 124. *Burnett* v. *Smith,* 240 S. W. (Tex. Civ. App.) 1007. *Wineinger* v. *Farmers' & Stockmen's Loan & Investment Association,* 278 S. W. (Tex. Civ. App.) 932. *Kountze* v. *Smith,* 135 Texas, 543.

Of course, we do not intimate that, if a trust is being mismanaged in such a way that it is likely that a serious impairment of its assets will result, with consequent damage to its creditors and shareholders, or if the trust is insolvent, or if a situation is disclosed that requires the appointment of a receiver, a court of equity will not grant appropriate relief. The bill presents no such case. *Milbank* v. *J. C. Littlefield, Inc.* 310 Mass. 55. *Bryan* v. *Welch,* 74 Fed. (2d) 964.

The plaintiffs direct attention to statements in *Horgan* v. *Morgan,* 233 Mass. 381, and in *First National Bank of New Bedford* v. *Chartier,* 305 Mass. 316, that the rights and obligations of the shareholders were to be determined by the "rules of law applicable to ordinary partnerships." These statements were made in proceedings brought by creditors, the first an action at law and the second a suit which in its essence was an action at law. The question calling for decision in this case was not presented in either of the cases cited, and the words quoted, which appear in those two decisions, cannot be wrested from their context and extended to the determination of an issue entirely different from that which the court had in mind in rendering those decisions. *Swan* v. *Justices of the Superior Court,* 222 Mass. 542. *Eaton* v. *Walker,* 244 Mass. 23. *Blumenthal* v. *Blumenthal,* 303 Mass. 275.

The plaintiffs have no right at common law to secure a dissolution of the trust, but they contend that they have such right under the uniform partnership act, G. L. (Ter. Ed.) c. 108A.

The purpose of the uniform partnership act was to establish the general principles of law applicable to partnerships and to have these principles adopted in the various States. The act must be given full play in its own field but it must not be construed to extend beyond its own proper boundaries and to change previously existing law which has been settled in other branches of our civil jurisprudence. The

purpose of the act was to elucidate and codify a particular branch of commercial law. *Edgerly* v. *Equitable Life Assurance Society*, 287 Mass. 238. *Wild* v. *Commissioner of Internal Revenue*, 62 Fed. (2d) 777.

It would require clear and apt language in this act to manifest a legislative intent that the rights of shareholders between themselves, in a business trust in the partnership form, should be so strongly emphasized to be that of partners as to preclude any consideration of settled principles of trust and property law which have been deemed pertinent in ascertaining the rights of a beneficiary under an express trust, especially upon his right to terminate the trust. See *Russell* v. *Grinnell*, 105 Mass. 425; *Sears* v. *Choate*, 146 Mass. 395; *Claflin* v. *Claflin*, 149 Mass. 19; *Young* v. *Snow*, 167 Mass. 287; *Dunn* v. *Dobson*, 198 Mass. 142; *McLaughlin* v. *Greene*, 198 Mass. 153; *Phipps* v. *Bosson*, 244 Mass. 361; *Devine* v. *Deckrow*, 299 Mass. 28; *Jensen* v. *Hugh Evans & Co.* 18 Cal. (2d) 290; *Whitaker* v. *Scherrer*, 313 Ill. 473; *Schumann-Heink* v. *Folsom*, 328 Ill. 321; *Wineinger* v. *Farmers' & Stockmen's Loan & Investment Association*, 278 S. W. (Tex. Civ. App.) 932; *Haynes* v. *Central Business Property Co.* 140 Wash. 596. Also see *Peterson* v. *Hopson*, 306 Mass. 597, 611; 2 Bogert, Trusts, § 304; 16 Fletcher, Cyc. Corp. § 8091; 8 Thompson, Corporations (3d ed.) § 6759; Warren, Corporate Advantages without Incorporation, 353.

The scope of the act is to be determined by its provisions. By § 6 thereof a partnership is defined as an association of two or more persons to carry on as coöwners a business for profit; by § 9 each partner is an agent of the partnership as to the partnership business; by § 10 one partner has certain rights to bind the others by a conveyance of the real estate; by §§ 11, 12 and 13 admissions by a partner and knowledge or notice to a partner are chargeable to the firm, and the partners are liable for wrongs committed by another partner in the course of the business of the firm; by § 18, subject to any agreement between the partners, all partners have equal rights of management, no one may become a member of the firm without the consent of all

the partners, and matters arising in the course of its business shall be decided by a majority of the partners; by § 24 a partner's property rights comprise the right to specific partnership property, an interest in the partnership and a right to participate in the management of the business; by § 25 a partner is a coöwner with the partners of specific partnership property as a tenant in partnership, the incidents of which give him an equal right with the other partners to possess this property for partnership purposes, but he cannot assign his interest in such property except by joining with the other partners in such an assignment, and upon his death his right in this property passes to the surviving partners; by § 26 the interest of a partner in the partnership is personal property; and by § 27 his share in the profits and surplus may be assigned but such assignment does not of itself dissolve the firm and gives to the assignee no right to participate in the management of the firm but merely the right to receive the share of the profits and surplus of his assignor. The partnership may be dissolved in accordance with § 31 "by the express will of any partner at any time" in contravention of the agreement between the partners or upon the death or bankruptcy of a partner; but dissolution as used in this section, as shown by § 29, means a change in the relation of the partners caused by one partner ceasing to be associated in conducting the business of the firm. The court is authorized by § 32 to enter a decree dissolving the partnership on account of the incapacity or misconduct of a partner or upon application of a purchaser of a partner's interest in the surplus and profits. It is unnecessary to recite further the details of this act, for enough appears to show the nature and characteristics of the kind of partnership that is the subject matter of this legislation. It makes no mention of a partnership with transferable shares. It does not attempt to regulate the privileges and obligations of the shareholders. It contains no provisions dealing with these important features that are peculiar to a business trust in the partnership form. On the other hand, the act establishes such a relationship between a partner and the partnership in the man-

agement, property and duration of the firm that a trust with transferable shares could not function if such a relationship were to be observed. No further comparison of the declaration of trust with the act is required to show that the organization created by the former is so different and distinct from an organization such as is described and regulated by the latter, that it is impossible to construe the act so as to include a business trust in the partnership form. This type of trust does not come within the act. *Fallon* v. *West End Street Railway,* 171 Mass. 249. *King* v. *Viscoloid Co.* 219 Mass. 420. *Prondecka* v. *Turners Falls Power & Electric Co.* 238 Mass. 239. *See* v. *Building Commissioner of Springfield,* 246 Mass. 340. *Bouchard* v. *First People's Trust,* 253 Mass. 351. *Libby* v. *New York, New Haven & Hartford Railroad,* 273 Mass. 522. *Attorney General* v. *J. P. Cox Advertising Agency, Inc.* 298 Mass. 383. *Martinelli* v. *Burke,* 298 Mass. 390.

The uniform partnership act has been cited by this court in only two cases where a business trust was involved. In *McCarthy* v. *Parker,* 243 Mass. 465, § 9 of the act was cited in conjunction with two decisions in support of the proposition that one dealing with the agent of a partnership who knows that the authority of the agent is limited cannot hold the partners for an act of the agent beyond the scope of his authority. This was the application of a general principle of the law of agency and not one that was peculiar to the law of partnership. The result of the decision would have been the same if the section had not been cited. The decision rested upon the common law and not upon the uniform partnership act. The services for which the plaintiff in that case sought to recover were performed years before the act became effective and the substantive rights of the parties which were created by the common law could not be affected by subsequent legislation. In *Downey Co.* v. *Whistler,* 284 Mass. 461, the plaintiff contended that § 17 made the trustees liable as partners for the acts of the preceding trustees, but the court pointed out that the organization was a pure trust and not a partnership and, consequently, the contention was not sound. The court did not

intimate that if the organization were a trust in partnership form the section would be applicable. It did no more than answer a contention of the plaintiff. There is, therefore, nothing in any of our decisions that tends to show that a business trust like the one in question is governed by the uniform partnership act.

The plaintiffs direct attention to a statement in *Ricker* v. *American Loan & Trust Co.* 140 Mass. 346, 348, that "There is no intermediate form of organization between a corporation and a partnership like the joint stock companies of England and of some of the United States known to the laws of this Commonwealth." Compare *Oliver* v. *Liverpool & London Life & Fire Ins. Co.* 100 Mass. 531; *S. C.* sub nomine *Liverpool Ins. Co.* v. *Massachusetts*, 10 Wall. 566; *Guy* v. *Donald*, 203 U. S. 399, 405, 406. The court was there concerned with a question of general classification, while the issue here discussed is one of construction of the uniform partnership act. Accordingly, the decision in that case is not contrary to anything here decided.

We are of opinion that the plaintiffs show no right at common law or under the uniform partnership act to dissolve the trust nor any other ground for relief.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs.*