**AITCHISON et ux. v. ANDERSON.**

No. 12353.

United States Court of Appeals
Ninth Circuit.

Aug. 28, 1950.

Rehearing Denied Oct. 16, 1950.

Julien A. Hurley, Fairbanks, Alaska, for appellant.

Maurice T. Johnson, Fairbanks, Alaska, for appellee.

Before HEALY, Circuit Judge, and MATHES and DRIVER, District Judges.

DRIVER, District Judge.

This is an appeal from a judgment of the district court for the Territory of Alaska granting dissolution of a partnership and declaring void a written contract for the sale of appellants' one-half interest in the partnership to appellee, the co-partner. For convenience we shall hereinafter refer to appellee as the plaintiff, or Anderson, and to appellants as the defendants, or the Aitchisons.

The facts necessary for a determination of the major issue are neither complicated nor highly disputed, according to the record. About June 13, 1947 plaintiff Anderson purchased a one-half interest in The Value Shop and Liquor Store operating in Fairbanks, Alaska. The other one-half interest was owned jointly by the defendants, Mr. and Mrs. Aitchison. Shortly thereafter the parties entered into an oral contract of partnership whereby profits and losses were to be shared equally by plaintiff and defendants. The Aitchisons were to devote their entire time to management of the business and were to receive a combined salary of $500 per month, to be deducted before computing profits. No term for this partnership was agreed upon.

The trial judge found, and there is ample evidence in the record to support that finding, that an inventory shortage of about $7,000 had occurred, that it appeared to be traceable to defendants, and that in compromise of such claim against defendants it had been agreed that $2,500 would be transferred from defendants' capital account and credited to plaintiff's capital account. It is clear, however, that such transfer was never entered in the books of the partnership, and that the plaintiff knew of that fact or could have known it at the time he contracted to purchase defendants' interest.

The record indicates that business arrangements were not too satisfactory and that a substantial loss was sustained during the first year of operation by the partnership. It also appears that there were differences over the method of keeping the books and who should perform that service.

Subsequently, on September 2, 1948, the parties executed an instrument entitled "Agreement to Sell" wherein the defendants agreed to sell, and plaintiff agreed to purchase "their undivided one-half (½) interest in and to the said business, consisting of the merchandise and stocks of goods and wares, and all the fixtures used in connection with said business and all other appurtenances in anywise appertaining to said business together with the good will and the right to use the trade name of the Value Shop and the Value Liquor Store."

The parties further agreed in the same instrument: "2. That the purchase price shall be as follows: a. The sum of $1,-000.00 plus the book value of the said ½ interest, said book value to be determined by the firm of Boulet and Kohler of Fairbanks, Alaska."

Upon execution of this contract defendants locked up the store, turned the keys over to plaintiff and withdrew. A statement of the book value as of September 1, 1948 was prepared by Boulet and Kohler and copies given to both plaintiff and defendants. Plaintiff refused to accept the value on the statement, challenged the inventory, and sent three men to check the quantities and re-value the goods, especially the dry goods inventory.

In October of 1948 this action was commenced, seeking an accounting and dissolution of the partnership, the complaint alleging "That the plaintiff and defendants have been unable to agree upon terms of dissolution of this partnership * * *". Nowhere did the complaint mention or ad-

mit the existence of a contract of dissolution.

Defendants' answer set up an affirmative defense alleging execution of the written contract of sale and prayed that the plaintiff be required to carry out its terms.

The District Court found that the defendants had breached the written contract of sale [1] and were therefore not entitled to any benefits thereof and that said contract was unenforceable.[2]

It is well recognized in law that where he intends to withdraw from participation in the business a sale by one of two partners of his rights in the partnership property and his entire interest in the partnership to the remaining partner dissolves the partnership,[3] even though the seller is not thereby relieved of his liabilities to creditors. While it is true that a mere executory contract to sell such interest would not actually dissolve the partnership, it would set out the terms of dissolution which are binding upon the partners unless or until proper grounds exist for rescission of the agreement. The existence of the written contract in this case certainly belies the allegation of the complaint that "the plaintiff and defendants

1. The trial court found:

"IV. * * * The evidence shows that the defendants have breached the contract so that it was up to the defendants, under the agreement, to furnish a book value audit showing the book value of the property, and the book value would have been the net value. The defendants have not done this, but have insisted upon erroneous, or false book values, so the contract does not give the defendants any rights in this matter.

* * * * * *

"VI. That the plaintiff is not the party at fault, and that the defendants are at fault.

* * * * * *

"VIII. (a) That on or about the last day of November, 1947, the defendants wrongfully took the co-partnership firm books from the partnership bookkeeper, Miss Davis, and refused to permit her then to enter the credit of ($2,500.00) two thousand five hundred dollars to plaintiff for capital investment, and debit the defendants with two thousand five hundred ($2 500.00) dollars in their capital investment account pursuant to the agreement of the partners of October 17th or 18th, 1947.

"(b) That at all times thereafter the defendants failed to have the books of said co-partnership firm reflect the above-mentioned agreement of the partners of October 17th or 18th, 1947.

"(c) That the defendants wrongfully caused the bookkeepers, Boulet & Kohler, to fail to show in their computation of the book value of the co-partnership firm assets the credits and debits of the partners as mentioned above and agreed to on the 17th or 18th of October, 1947.

"IX. (a) That the defendants wrongfully caused the bookkeepers, Boulet & Kohler, in making up the book value of the assets of said copartnership firm, to value an alleged lease-hold interest of the partnership in the premises whereon the business is occupied as being of the value of three thousand eight hundred and thirty-four dollars and forty-eight cents ($3,834.48), whereas the co-partnership firm had no lease whatsoever, but was holding on a month to month tenancy or under an oral promise for a two-year lease, which was invalid under the statute of frauds of Alaska.

"(b) The defendants wrongfully caused the bookkeepers, Boulet & Kohler, in making up their valuation of the book value of the assets of said co-partnership firm to take the landed cost of articles as the value thereof, instead of taking the true net value of the assets of the partnership.

"(c) The defendants wrongfully caused the bookkeepers, Boulet & Kohler, to value accounts receivable of the sum of four hundred eighteen dollars and sixty-four cents ($418.64) at ninety (90%) per cent of their value, when, in fact, they were of a value not exceeding seventy-five (75%) per cent thereof.

"(d) The defendants erroneously caused the bookkeepers, Boulet & Kohler, to value the dry goods of said co-partnership firm at the sum of ten thousand eight hundred and thirty dollars and sixteen cents, ($10,830.16) whereas, the true value, as shown by the testimony of the witness Leo E. Morris (supplemented by plaintiff's identification number 4), is five thousand one hundred and ninety-seven dollars and fifty-nine cents ($5,197.59)."

2. The trial court concluded:
"III. That the defendants having breached the terms of the written contract are not entitled to any benefits therefrom, and that said contract is unenforceable."

3. 47 C.J. 116, Sec. 780; 40 Am.Jur. 299, Secs. 243, 244. See also: In re Fackleman, D.C., 248 F. 565; In re Suprenant, D.C., 217 F. 470; Kelley v. McNamee, 9 Cir., 164 F.2d 369, 22 L.R.A., N.S., 851, 16 Ann.Cas. 299.

have been unable to agree upon terms of dissolution of this partnership * * *".

■ A contract to sell or of sale which names no price, but provides that the price shall be fixed by a third person or persons is not invalid[4] and such a method of determining the price of goods sold is expressly provided for by Alaska statute.[5] If the third person fails to fix the price under the terms of the contract, without fault of either party, the sale is thereby avoided; but if delivery of any part has been made to the buyer he must pay a reasonable price therefor.[6] And in the absence of fraud or mistake the price fixed by a designated third person or persons is conclusive upon the parties.[7] An award of appraisers is subject to impeachment for fraud, or misconduct amounting to fraud, or mistake which is not merely a wrong conclusion upon the matters submitted, but it is not to be vacated for mere errors of judgment upon questions of fact or law submitted.

In the case at bar the trial judge made no finding, and there is no evidence whatsoever in the record which could support such a finding, that Boulet and Kohler acted in bad faith in determining the book value, and he made no finding that their determination was erroneous in the sense that it was based upon mistake and could not be binding upon the plaintiff.

■■ Plaintiff makes much of the fact that there was substantial disagreement as to whether the term "book value" as used in the written contract meant net value or the original cost of the goods landed in Alaska, otherwise called "landed value," at which the goods were carried on the books. Boulet and Kohler, the accountants, used the latter value in arriving at "book value." The record is replete with conflicting testimony as to the value of the inventory and as to the value of defendants' partnership interest, but in spite of the fact that there was evidence from which the trial judge could find that the amount arrived at by Boulet and Kohler was not the true book value, still there is no evidence at all in the record which suggests bad faith on the part of the accountants. And a dispute over the construction of the contract would not constitute its breach.

---

4. "Ordinarily, the price either in an executed sale or in a contract to sell is fixed by the parties at the time the bargain is made. It need not be stated in words, however. If the parties have by any course of dealing made it possible for a reasonable man in their position to understand their intention as to the price, it will be fixed by this understanding based on previous course of dealing as effectually as if stated in words. Likewise, either in an executory contract to sell, or in a sale, the parties may provide for some means of determining the price later by outside circumstances. Even an agreement that the price shall be fixed by an interested party is valid if his interest is known and there is no bad faith." Williston on Sales, Sec. 167, p. 455; Uniform Partnership Act, Sec. 10(1). See also: Castle Creek Water Co. v. Aspen, 8 Cir., 146 F. 8, 8 Ann.Cas. 660; Martin v. Vansant, 99 Wash. 106, 168 P. 990, Ann.Cas.1918D, 1147.

5. Sec. 29-1-32, Alaska Compiled Laws.

6. 1 Williston on Sales 451; Sec. 175; 46 Am.Jur. 425; Louisville Soap Co. v. Taylor, 6 Cir., 279 F. 470. See Sec. 29-1-32, Alaska Compiled Laws.

7. 1 Williston on Sales, Secs. 167 and 177; Monidah Trust v. Arctic Const. Co., 9 Cir., 264 F. 303, 306; Leudinghaus Lumber Co. v. Leudinghaus, 9 Cir., 299 F. 111; Omaha Water Co. v. City of Omaha, 8 Cir., 162 F. 225, 233. 15 Ann.Cas. 498; Krauss v. Kuechler, 300 Mass. 346, 15 N.E.2d 207, 117 A.L.R. 1355; New England Trust Co. v. Abbott, 162 Mass. 148, 38 N.E. 432, 27 L.R.A. 271; Martin v. Vansant, 99 Wash. 106, 119, 120, 168 P. 990, Ann.Cas.1918D, 1147. See also: Palmer v. Clarke, 106 Mass. 373, 389, where the court said:

"A reference to a third person to fix by his judgment the price, quantity, or quality of material, to make an appraisement of property and the like, especially when such reference is one of the stipulations of a contract founded on other and good considerations, differs in many respects from an ordinary submission to arbitration. It is not revocable. The decision may be made without notice to or hearing of the parties, unless such notice and hearing be required by express provision or reasonable implication; and it may be made upon such principles as the person agreed on may see fit honestly to adopt, or upon such evidence as he may choose to receive."

926

A contract will not be rescinded merely because differences of opinion arise between the parties as to the correct construction of the contract.[8]

■ The "Agreement to Sell" dated September 2, 1948, is a simple, written contract to sell. There is nothing in the record, nor any allegation in the pleadings, to show that it was not voluntarily entered into, or to indicate that it was procured through fraud. Nor is there evidence in the record showing refusal to perform or any other breach on the part of defendants which would give the plaintiff a right to rescind. Though there is evidence which would support the findings[9] of the trial judge, still those findings do not ipso facto show a breach.

It is our conclusion that the partners themselves had come to an agreement for dissolution of the partnership, that they had put that agreement in writing, and that they were and are bound by it. Plaintiff is not entitled to an accounting while the agreement is in effect.[10] The cause must be remanded to the district court to have the rights of the parties determined under the contract.

Reversed.

8. 17 C.J.S., Contracts, § 417, p. 901.

9. See footnote 1.

10. "The right to an account of his interest shall accrue to any partner or his legal representative, as against the winding up partners or the surviving partners or the person or partnership continuing the business, at the date of dissolution, *in the absence of any agreement to the contrary.*" (Emphasis added.) Sec. 28-1-65, Alaska Compiled Laws. See also Sec. 28-1-42(2), Alaska Compiled Laws.