76 So.2d 478 (1954)
K.B. WEISSMAN, Appellant,
v.
LINCOLN CORPORATION, a Florida corporation, Appellee.
Supreme Court of Florida. Division A.
November 9, 1954.
Rehearing Denied December 17, 1954.
*479 Anderson & Nadeau, Miami, for appellant.
Williams, Salomon & Katz, Miami, for appellee.
SEBRING, Justice.
Lincoln Corporation was organized under the laws of Florida in 1946. The stock of the corporation was issued to two family groups, the Freisingers and the Cohens. The articles of incorporation contained a provision that "stockholders may include in their agreements between themselves the following as valid matters of agreement; to-wit * * * (2) Any limitation upon the transferability or assignment of the stock; (3) the conferring of preemptive rights of purchase upon stockholders as conditions precedent to the sale of any other stock * * *." The by-laws of the corporation contained provisions in that identical language, together with certain regulations for transfer of stock on the corporate books, with an express statement that "Nothing herein contained shall be construed as authorizing a transfer of the stock in violation of any agreement which may be entered into between stockholders limiting and prescribing the manner * * * of such transfer."
Pursuant to the provisions of the articles of incorporation, a stockholders' agreement was entered into by all the stockholders, which provided:
"6) No stock in this corporation shall be sold unless all of the stock in the group which contains the stock proposed to be sold is first offered to the holders of stock in the other group * * *
"8) A transfer by operation of law shall not be deemed a transfer such as is prohibited by the terms of this agreement; but any such transferee shall hold the stock so required subject in all respects to the terms of this agreement * * *
"12) No stock in this corporation shall be subject to pledge excepting with the consent, in writing, of all of the stockholders to this agreement * * *
"13) Whenever any stock of this company is subject to any pledge * * * or encumbrance, or charge of any kind (other than one which is prohibited by the terms hereof, the parties agreeing that attempt at a prohibited pledge will be wholly ineffectual), any member of any group, upon the debt evidenced by the said encumbrance being in default, may pay unto the holder of such encumbrance that amount of said debt so as to release the said stock from such encumbrance * * *."
On October 14, 1946, Freisinger, Inc., a corporation dominated by the Freisinger family, issued a series of promissory notes to Wek Sales Company, a New York partnership. The notes were endorsed by Henry and Bertha Freisinger, two of the stockholders of Lincoln Corporation, who, in violation of the terms of the stockholders' agreement, pledged stock certificates of the corporation as security for the loan. There was a default in the payment of the loan and in 1949 the certificates were sold in a New York lien foreclosure proceeding to satisfy the debt. The appellant Weissman, who was manager of Wek Sales Company, purchased the pledged stock at the foreclosure sale. Thereafter, he instituted this present proceeding in equity to be recognized as a stockholder in Lincoln Corporation by virtue of his purchase of the stock; praying in his complaint that the corporation be dissolved, that a receiver be appointed, and that the assets be distributed, because the corporation had ceased to have any corporate functions due to the fact that it had sold its primary asset, an apartment *480 building in Miami, and had unlawfully distributed the proceeds to other stockholders.
In due course Lincoln Corporation filed an answer and a counterclaim, denying Weissman's status as a stockholder and requesting a declaration as to the ownership of the stock in question. In reply to the counterclaim, three cross defendants, Bernard Cohen, Phillip Cohen and Jack Warsaw, who had acquired the Freisingers' interest in the stock, in 1950, asserted rights under the stockholders' agreement and prayed for relief thereunder, in the alternative, as follows:
"7 * * * a) That the ownership of the Stock Certificates in question be determined and confirmed by this court and that the plaintiff, Weissman, be required to deliver the Certificates in question to these cross-defendants.
"b) That, in the alternative, these cross-defendants be permitted to exercise their preemptive right of purchase by paying unto the plaintiff the sums bid by him for the acquisition of the two Certificates and that thereupon the plaintiff be required to assign to these cross-defendants whatever right, title or interest in said Certificates he claims to have.
"c) In the alternative, if the court should determine adversely to these cross-defendants under the first and second prayers of this reply, that this court determine their rights under paragraph `13' of the said Stockholders' Agreement and permit the discharge of the plaintiff's claim to said Stock Certificates by the payment to him of the sum due and unpaid upon the notes executed by the Freisingers and Freisinger, Inc., in favor of Wek Sales Company, together with interest thereon to the date of the institution of the first suit to enforce said pledge, but without any requirement to pay counsel fees as stipulated in said note by virtue of the fact that these cross-defendants were not given an opportunity to discharge the said obligation, prior to the institution of said suit, as in equity and good conscience they should have been accorded."
Testimony was taken before a master, who concluded that "the limitations on the sale and pledge of stock * * * imposed by the agreement * * * are valid and binding;" that "equity will not permit the circumvention of a preemptive right of sale of stock by a pledge of such stock;" that the endorsement on the certificates was sufficient to give notice of the restrictions on transfer, and accordingly Wek Sales Company and Weissman took subject thereto, no notice of the New York proceedings having been given to Lincoln Corporation or its stockholders; that "although there is no express provision in the agreement * * * for a redemption of stock certificates by other stockholders, when the pledge is made without [their] consent * * * equity gives * * * right of redemption in order that a pledge of stock may not be used as a device to circumvent the preemptive right to purchase * * *;" and that the cross defendants "are entitled to redeem stock certificates No. 1 and 2 upon the payment to [Weissman] of the balance due upon the indebtedness * * * to Wek Sales Company," together with interest through date of payment, costs and counsel fees in connection with the New York foreclosure proceeding, but not in connection with the instant suit.
The final decree from which this appeal has been taken confirmed the findings of the master, dismissed the complaint with prejudice, and provided "that the affirmative relief sought by the cross-defendants * * * as prayed for alternatively in Paragraph 7(c) of their amended reply to the counterclaim * * * be and the same is herewith granted against the plaintiff inasmuch as no exceptions were filed by said cross-defendants to the failure of the Special Master to recommend that they be accorded alternative relief under paragraph 7(a) or (b) of their amended reply aforesaid." (Emphasis supplied.)
*481 From an inspection of the foregoing decree and the pleadings in the cause it is apparent that, whatever may have been the view of the court below as to the validity of the stockholders' agreement in toto, the only relief accorded appellees was by way of enforcement of the provision for preemptive right of purchase. For the court, by its decree herein, gave appellees only a right to redeem the stock in the hands of the purchaser at the foreclosure sale, and denied their alternative prayer that ownership of the stock be confirmed in them and the pledge and ensuing sale be declared invalid as in violation of the agreement. And because the appellees did not except to the ruling of the trial court in this particular, the only point properly before us on this appeal is the propriety of the court's award of relief pursuant to paragraph 7(c) of the cross defendants' reply, giving effect to the pledge as a valid transaction but granting a right of redemption under the particular circumstances, as necessarily implied in the agreement to prevent frustration of the option rights reserved in paragraph six thereof.
It should be noted in respect of the questions presented under this adjudication that there is not here involved any question of a corporation's power to impose a restriction upon its stockholders solely by virtue of a by-law enacted by corporate officers. If this were the case some authority could be found for the proposition that "a by-law provision is valid only where it is authorized by statute, or by the charter, or is reasonably necessary to the business of the corporation," Christy, Transfer of Stock, 2d ed., Sec. 39, p. 75  although even as to this proposition invalid by-laws, restricting transfers without charter authority, have frequently been held operative as contractual provisions assented to by the stockholders. Krauss v. Kuechler, 300 Mass. 346, 15 N.E.2d 207, 117 A.L.R. 1355; Palmer v. Chamberlin, 5 Cir., 191 F.2d 532, 27 A.L.R.2d 416; Model Clothing House v. Dickinson, 146 Minn. 367, 178 N.W. 957; Farmers' Mercantile & Supply Co. v. Laun, 146 Wis. 252, 131 N.W. 366; Vannucci v. Pedrini, 217 Cal. 138, 17 P.2d 706; Brown v. Little, Brown & Co., Inc., 269 Mass. 102, 168 N.E. 521, 66 A.L.R. 1284; Annotations 65 A.L.R. 1168, 1171; 138 A.L.R. 650; 2 A.L.R.2d 745. But what we have here is a restriction contained in an agreement entered into by all the stockholders pursuant to authority allegedly conferred by its articles of incorporation and its by-laws, under existing statutes, and not one contained in a by-law standing alone.
The statutes in force when the corporation was organized and the stockholders' agreement was made provided that "every corporation * * * shall have power to: * * * make * * * by-laws * * * for * * * the transfer of its stock," and that the charter or certificate of incorporation may include "any provision * * * limiting and regulating the powers of * * * the stockholders * * * provided such provisions are not contrary to the laws of this state." Sections 610.03, 612.03, Florida Statutes 1951, F.S.A. The certificate of incorporation under which Lincoln Corporation was organized provided that "stockholders may include in their agreements between themselves the following as valid matters of agreements * * * Any limitations upon the transferability or assignment of the stock * * * [and] the conferring of preemptive rights of purchase upon stockholders as conditions precedent to the sale of any other stock * * *." The by-laws contained that identical language, provided generally for transfers of stock upon the corporate books, and specified that "Nothing herein contained shall be construed as authorizing a transfer of the stock in violation of any agreement which may be entered into between stockholders limiting and prescribing the manner and method of such transfer."
It seems certain, from a study of the decided cases, that such statutory and charter provisions are ample to authorize the imposition by agreement of the stockholders of any reasonable restraints upon the transfer or alienation of shares. Longyear *482 v. Hardman, 219 Mass. 405, 106 N.E. 1012; Nicholson v. Franklin Brewing Co., 82 Ohio St. 94, 91 N.E. 991. And for the proposition that an option clause of the nature here involved is, by the great weight of authority, regarded as a reasonable restraint on alienation which is valid and binding against participating stockholders and transferees with notice, see Thompson on Corporations, Vol. 6, 3rd ed., section 4156, et seq.; and decisions correlated in Vol. 23, p. 570, Tulane Law Review; Annotations 65 A.L.R. 1168; 138 A.L.R. 650.
The second point for determination arises from the character of the relief granted the appellees under the provisions of the stockholders' agreement for preemptive right of purchase.
There does not appear to have been extensive consideration by the courts of the rights of stockholders under an option provision as against one who acquires an interest in stock by a pledge or foreclosure thereof. But such cases as have been decided seem to sustain the granting of relief such as was awarded by the court below; and we find no decisions directly supporting appellant's position that such an option provision can be effectively and absolutely overcome by the simple device of pledging stock and permitting ex parte foreclosure of the pledgee's lien.
In the case of First National Bank of Canton v. Shanks, Ohio Com.Pl., 73 N.E.2d 93, for example, it was held, even in the absence of a specific restriction against pledges, that pledgees who bought in pledged stock, with notice of a preemptive right of purchase in other stockholders, took such stock subject to the restriction, the option being upheld as a valid contractual right binding on parties who took with notice upon the face of the certificate. The court found that the failure of the other stockholders to insist upon their right to purchase the stock at the time it was sold to satisfy the lien did not destroy the effectiveness of the agreement, and that in the event of any further contemplated transfer they might exercise their option.
In Monotype Composition Co., Inc., v. Kiernan, 319 Mass. 456, 66 N.E.2d 565, it was held that stockholders might enjoin a sale of pledged stock and require its redemption, in a suit against a pledgee who acquired his lien with notice of a prohibition against "sale or transfer" without first giving other stockholders an opportunity to exercise their option, the pledge itself being deemed to be repugnant to the option clause. In the case the court pointed out, as is true in the situation now before us, that "this is not a case of the delivery of a stock certificate, without more, as a pledge. The stock certificate was accompanied by a transfer in blank, signed by the stockholder. Delivery of the stock certificate with such a transfer purported to pass the legal title to the stock, and but for the restrictive by-law was sufficient to do so." 66 N.E.2d at page 567. Though it may be said that the cited case is distinguishable as involving a restriction against "sale or transfer" and not simply against "sale," the reasoning of the opinion is persuasive that such a transaction as a pledge by transfer in blank "presented almost as great a threat of interference by strangers in the corporate affairs [as would a transfer intended to be absolute and final]." 66 N.E.2d at page 568.
It has been stated by an eminent authority that as a general rule a provision "that no stock shall be sold until first offered to the corporation" applies only to voluntary sales of stock by the stockholders; Christy, Transfer of Stock, 2d ed., Sec. 39. People ex rel. Malcolm v. Lake Sand Corp., 251 Ill. App. 499; Crescent City Seltz and Mineral Water Manufacturing Company v. Deblieux and Letorey, 40 La. Ann. 155, 3 So. 726; Good Fellows Associates, Inc., v. Silverman, 283 Mass. 173, 186 N.E. 48. But the same authority also states that while "such a provision does not prevent a pledge of the stock * * * it does prevent an unrestricted sale by the pledgee." Christy, section 39, supra, and 1952 supplement thereto (emphasis supplied), citing First National Bank of Canton v. Shanks, supra; and Monotype Composition Co., Inc., v. Kiernan, supra.
*483 As we view the cases recognizing the rule that a provision for preemptive right of purchase applies only to voluntary sales, and not to pledges or judicial sales, they are bottomed on the logic that in cases involving sale on execution or the usual judicial sale the stockholders have the right to protect themselves by attending the sale and preventing acquisition of the stock by strangers, or by adverse interests, by purchasing at whatever price the stock may bring. Barrows v. National Rubber Co., 12 R.I. 173; 13 Am.Jur., Corporations, Sec. 339.5, 1954 Supplement; Annotation 2 A.L.R.2d 754.
Whatever may be said for the soundness of this logic respecting cases generally, it is plain that in the present case neither the corporation nor the stockholders were made parties to the New York proceedings under which the pledged stock was sold and no notice was ever given them of the foreclosure sales. Consequently they were not given the right which the law contemplates to protect themselves and the corporation by bidding at the sale. Under these facts we think the court below was correct in ruling that the corporation and the stockholders cannot be estopped by their failure to protect their rights at the sale; that the appellant purchased the certificates with notice of the stockholders' agreement and that by so purchasing he took the stock subject to such restrictions as were contained in the agreement and merely became subrogated to the rights of the pledgee as against the corporation and the stockholders. Compare Reichert v. Appel, Fla., 74 So.2d 674; Lindsley v. Phare, 115 Fla. 454, 155 So. 812.
The right given the stockholders to redeem the stock does not, as a practical matter, give them any greater rights or privileges than would have been accorded them had they been given notice of, and opportunity to protect their interest in, the New York foreclosure proceedings and sale thereunder. And in the absence of any showing or contention by the appellant that his interest in the stock in question, by reason of his purchase at the foreclosure sale, was in fact greater than the sum specified in the decree for which the stockholders were permitted to redeem, including the balance of the pledgor's lien, together with interest and costs, it cannot be assumed that the terms of the decree are inequitable in this respect.
A final point urged by the appellant is that the endorsement on the stock certificate in question was not sufficient to put him on notice, under the Uniform Stock Transfer Act, of the restrictions on the right of a stockholder to pledge or sell his certificates, and that accordingly he cannot be affected by any such restrictions.
As to this, the record shows that the stock certificates which Weissman acquired at the foreclosure sale in New York bore the endorsement "The original of this stock is subject in all respects to the terms of a stockholders' agreement made under date of March 13, 1946, the text of which is included among the minutes of the meeting of the Board of Directors and Stockholders held on March 13, 1946, and all persons to whom these presents may come are referred to the said minutes for the text of said stockholders' agreement." The applicable provisions of the Uniform Stock Transfer Act provide: "There shall be no restriction upon the transfer of shares so represented by virtue of any bylaws of such corporation, or otherwise, unless the right of the corporation to * * * the restriction is stated upon the certificate." Section 614.17, Florida Statutes 1951, F.S.A. (Emphasis supplied.)
It will be noted that the controlling statute required only that "the right * * * to * * * the restriction" be stated on the certificate. The language of the statute is significant in the light of appellant's contention that the terms of the restriction itself must be set forth on the certificate and that nothing less will suffice. We have the view that the right to the restriction did appear on the certificate and was sufficiently stated to put Weissman on notice of the terms of the stockholders' agreement and to bind him thereby. See *484 Bloomingdale v. Bloomingdale, 107 Misc. 646, 177 N.Y.S. 873. See also Longyear v. Hardman, supra; Chaffee v. Farmers' Co-Op. Elevator Co., 39 N.D. 585, 168 N.W. 616; Scruggs, Vandervoort & Barney Bank v. International Shoe Co., 227 Mo. App. 378, 52 S.W.2d 1027. Christy, supra, pp. 45-6; Vol. 12, Fletcher's Cyc., Corporations, perm. ed. Sec. 5479.
The decree appealed from should accordingly be affirmed.
It is so ordered.
ROBERTS, C.J., and TERRELL and MATHEWS, JJ., concur.